IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:19-CR-29 |
| | ) | |
| ANTHONY BUTKIEWICZ III, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## OBJECTION TO DETENTION HEARING

The United States of America now responds to the defendant's Objection to Detention Hearing and makes the following proffer and argument supporting the defendant's pretrial detention. The defendant left several threatening voicemails at Senator Mark Warner's Richmond office that escalated in violence. The defendant's first threat against Senator Warner: he demanded that the Senator hold a town hall meeting in Norfolk where, the defendant explained, "I would personally like to stand face to face with you and I will punch you in the jaw! And you can lock me up and put me in jail, my friend! I ain't got a problem with it." Not satisfied with just assaulting and battering the Senator, the defendant added: "[S]tick your head between your f*cking legs and kiss your ass goodbye because we've got a bullet right for your ear!" The "we" in that statement included Lee Boyd Malvo, one of the DC snipers. Apparently, the defendant intended to act in concert with a terrorist. And if those threats were not direct enough, the defendant went on: "Walk outside your f*cking front door, my friend! Don't forget, buddy! Just don't f*cking forget [makes shooting sound]. I'll f*cking pop you, climb down out of the tree, and get in my car and drive the f*ck away. It is f*cking real easy buddy." The defendant must be detained pending trial.

## PROCEDURAL BACKGROUND

Last week, a federal grand jury sitting in Norfolk indicted the defendant on one count of threatening to assault Senator Warner—a Member of Congress—with intent to impede, intimidate,

and interfere with Senator Warner while he was engaged in the performance of official duties, in violation of 18 U.S.C. § 115(a)(1)(B). On Thursday, the defendant made his initial appearance, the government moved for pretrial detention, and Magistrate Judge Miller scheduled the hearing for today and ordered the defendant's temporary detention until then.

## LEGAL STANDARD – THE BAIL REFORM ACT

Under the Bail Reform Act, a defendant may be detained pre-trial if a judicial officer determines that "release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). This section outlines seven specific conditions where a "judicial officer shall hold a hearing to determine whether any condition or a combination of conditions … will reasonably assure the appearance of such person." 18 U.S.C. § 3142(f) (emphasis added).

The first five conditions commence upon motion of the Government in cases that involve (A) crimes of violence; (B) offenses with maximum sentences of life imprisonment or death; (C) certain offenses prescribed in the Controlled Substances Act; and (D) any felony where the offender has two or more convictions described in (A)–(C) above. 18 U.S.C. § 3142(f)(1). The last two conditions commence upon motion of the Government "or upon the judicial officer's own motion, in a case that involves (A) a serious risk that such person will flee; or (B) a serious risk that such person will obstruct … justice." 18 U.S.C. § 3142(f)(2).

So under 18 U.S.C. § 3142(f)(2)(A), "a detention hearing may be held if either the United States or the court *believes* there is a serious risk of flight." *United States v. Powers*, 318 F. Supp. 2d 339, 341 (W.D. Va. 2004) (citing 18 U.S.C. § 3142(f)(2)(A)) (emphasis added).

When a court considers detaining a defendant, it must undertake a two-step analysis. First, it determines if the government made a threshold showing of one of the statutory conditions for

seeking a detention hearing under § 3142(f). Second, at the detention hearing the government must then demonstrate that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any person and the community." 18 U.S.C. § 3142(e)(1).

At the detention hearing, "[w]ith regard to the risk of flight as a basis for detention, the government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future court proceedings." *United States v. Stewart*, 19 Fed. App'x 46, 48 (4th Cir. 2001) (unpublished). But "the government must prove by clear and convincing evidence that the defendant poses a danger to the community and that no conditions can reasonably assure the safety of other individuals and the community." *Id.* (citing 18 U.S.C. § 3142(f)(2)(B)).

Notably, if a defendant is accused of a § 3142(f)(1) offense, there is a rebuttable presumption that the defendant will be detained and the burden shifts to the defendant to seek release. This is due to the nature of (f)(1) offenses being violent, requiring harsher sentences, or having been perpetrated against minors. On the other hand, under § 3142(f)(2) the burden remains on the government to prove that Defendant is a serious flight risk or poses a serious risk of obstructing justice if released.

In response, defendants in this court typically present a third-party custodian, often a family member, and sometimes suggest that electronic monitoring reduces or eliminates the risk of flight or the danger to the community. But "[t]o say they will not engage in [crime] because they are employed or have substantial roots in the community is *non sequitur*. The Grand Jury has found that they engaged in [crime] despite those roots, thereby establishing the irrelevance of those roots." *United States v. McDonald*, 238 F. Supp. 2d 182, 187 (D.D.C. 2002).

As to the risk of non-appearance, "although electronic monitoring is a method for monitoring a defendant's whereabouts, it does not prevent a defendant from absconding. Therefore, [a] [d]efendant's proposed conditions do not obviate the risk that [he] might flee, nor the danger [he] presents to the community." *United States v. Lorenzana–Cordon*, No. 03–331–132015, WL 5011445, at *4 (D.D.C. Aug. 24, 2015).

In determining whether a defendant poses an unreasonable risk of flight or danger to another person, the following factors must be considered: (1) "the nature and circumstances of the offense charged"; "(2) the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

## GOVERNMENT'S THRESHOLD SHOWING

A. <u>The government's good-faith basis is sufficient to satisfy the requirement to hold a detention hearing.</u>

The defendant argues that the Bail Reform Act requires not one, but two evidentiary hearings to secure a defendant's pretrial detention. Specifically, he contends that "[t]he government must make an evidentiary showing as to the presence of … a circumstance" under § 3142(f), "[a]nd the judicial officer may order a detention hearing only upon finding by a preponderance of the evidence that one of the § 3142(f) circumstances is actually present." Objection at 2. In other words, the defendant demands that the government, at the initial appearance, put on a proffer that satisfies the preponderance standard before putting on the same proffer satisfying the preponderance standard at the detention hearing. He is wrong.

As the defendant acknowledges, to proceed to a detention hearing under § 3142(f)(1), the government need only show that the defendant "has been charged with one of the crimes enumerated in" that provision. *Id.* at 3 (internal quotation marks omitted). As discussed in greater

detail below, a violation of § 115(a)(1)(B) is a crime of violence.

The appropriate standard for the threshold question of whether there is a serious risk that defendant will flee, however, is a "good faith" basis. This contention is grounded in the requirement of any pretrial motion, which "must state the grounds upon which it is based" and must have a "*good-faith belief* that valid grounds exist for the relief sought." Fed. R. Crim. P. 47(b); *United States v. Melendez-Carrion*, 790 F.2d 984, 993 (2nd Cir. 1986) (emphasis added). Indeed, it is only the initial basis upon which the detention hearing is sought. The subsequent hearing is then the one that applies a preponderance-of-evidence standard.

Far from being "derived from the plain text of the statute," Objections at 2, the defendant's reading of the Bail Reform Act "would create an absurd result," *United States v. Bran*, 776 F.3d 276, 281 (4th Cir. 2015). To raise the bar for 18 U.S.C. § 3142(f)(2) above anything more than a good-faith basis is to have the conflicting result of creating a need for the government to present what is essentially a detention-hearing level of evidence to support having a detention hearing.

The defendant's interpretation would also undermine the Magistrates Act, 218 U.S.C. § 636, which Congress enacted to help district judges more efficiently manage their caseloads. Requiring magistrate judges to hold the same hearing twice when they already hold many detention hearings in a weeks' time would hamstring their ability to carry out their charge. This duplication of time and effort "wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

The Court should apply the good-faith standard and hold the detention hearing.

B.  <u>Violent threats under § 115(a)(1)(B) are crimes of violence under the Bail Reform Act.</u>

The defendant also argues that § 115(a)(1)(B) is not a crime of violence because "[t]he categorical approach is used to determine whether an offense meets § 3156(a)(4)'s crime-of-violence definition"; that, under the categorical approach, the Court must only look at the elements of assault, not those of the other crimes prohibited in the statute; and that federal assault is not categorically a crime of violence. Objections at 4–10. Again, he is incorrect.

The defendant's argument does not distinguish "between how crimes of violence are defined for the purpose of imposing sentencing enhancements versus determining eligibility for a pretrial detention hearing." *United States v. Grooms*, No. 3:15-MJ-00025, 2015 WL 1982097, at *4 (S.D.W. Va. Apr. 29, 2015). Courts in this Circuit make that distinction, and this Court should, too.

"[T]here are a number of significant practical, if not legal, distinctions between noticing a crime of violence at the pretrial versus the sentencing stages of a criminal case. For example, designating an offense as a crime of violence at the sentencing stage irrevocably changes the length of a defendant's sentence." *Id.* (internal quotation marks omitted). "In contrast, designating an offense as a crime of violence pretrial merely permits (1) the Government to seek detention; and (2) the Court to peek behind the categorical treatment of the offense to determine whether conditions of release exist that will ensure the safety of the community." *Id.* (internal quotation marks omitted). In short, "the distinctions to be made between the sentencing and pretrial detention phases are manifest." *Id.* (internal quotation marks omitted).

The reasoning of *Grooms* is instructive. There, the crime at issue was cyberstalking, in violation of 18 U.S.C. § 2261(a)(2)(A). The defendant argued for a strict application of the categorical approach to support his argument that the crime was not one of violence under § 3156(a)(4) and thus that the government had not made a showing for a detention hearing. The court rejected that argument: "Finding an offense under 18 U.S.C. § 2261A(2)(A) to be a crime of violence in the setting of bail merely permits the court to look behind the categorical approach at the core issue of whether the defendant poses a risk to the safety of the community or other persons" so that "their safety cannot reasonably be ensured even with the imposition of restrictive conditions." *Id.*

The court went on: "This type of review is particularly important in the context of a stalking or cyberstalking charge given the often obsessive compunction of the alleged offender to harm a specific person." *Id.* The court highlighted that "[h]istory is replete with tragic stories of individuals being released on bond and immediately fulfilling threats of violence against the ex-spouses, family members, or partners the individuals had stalked, intimidated, and harassed. *Id.*

So too, here. A detention hearing is important so that the Court can review the facts of "the obsessive compunction of the alleged offender to harm a specific person"—Senator Warner. And while the court in *Groom* pointed to "history" to support its conclusion, this Court has much strong evidence—the defendant's own post-arrest statement that he fully intended to carry out his threat to assault the Senator. Under that less-strict approach, the Court should conclude that the defendant committed a crime of violence.

Even if the defendant's stricter categorical approach applied, however, violent threats under § 115(a)(1)(B) satisfy the standard. Under that approach, courts look to whether "[t]he least culpable proscribed" in the statute "is categorically a crime of violence." *United States v. Autrey*,

263 F. Supp. 3d 582, 592 (E.D. Va. 2017), *aff'd*, 744 F. App'x 165 (4th Cir. 2018). In § 115, the least culpable conduct is not assault, as the defendant suggests, but threats. *See United States v. Holland*, 737 F. App'x 151, 154 (4th Cir. 2018) (concluding that "offering to cause harm" was "least culpable means of committing the offense of [South Carolina] domestic violence," which in turn "qualifies as a threatened use of force under the force clause"). That makes sense—a defendant should be punished less for the threat of carrying out a crime than for committing the crime itself.

And violent threats are crimes of violence under *Johnson v. United States*. "Statements constitute a true threat if an ordinary reasonable recipient who is familiar with the[ir] context ... would interpret [those statements] as a threat of injury." *United States v. Armel*, 585 F.3d 182, 185 (4th Cir. 2009) (alterations in original) (internal quotation marks omitted). Justice Scalia, concurring in *United States v. Castleman*, 134 S. Ct. 1405, 1415 (2014), noted that it would be impossible to cause "fear of injury" without threatening to use force capable of producing an injury. 134 S. Ct. 1405, 1417–18 (Scalia, J., concurring). Thus, an act or threatened act that creates a "fear of injury" necessarily requires the threatened use of force capable of causing physical pain or injury, which equates to the threatened use of physical force as defined in the sentencing guidelines. *Id.*; *see United States v. Vanderhorst*, No. 4:17-CR-00865-RBH-1, 2018 WL 2462873, at *4 (D.S.C. May 31, 2018) (applying Justice Scalia's reasoning to 924(c) context)).

Indeed, based on similar reasoning, one district court—the only federal court to rule on whether a violation of § 115(a)(1)(B) is a crime of violence—held that violent threats under that provision qualify as crimes of violence under *Johnson*. *See United States v. Bundy*, No. 2:16-CR-46-GMN-PAL, 2017 WL 449593, at *7 (D. Nev. Feb. 2, 2017). The Court should conclude the same.

C.　　Even under the preponderance standard, the defendant carries a serious risk that he will flee.

Even if the defendant's proposed preponderance standard applied, the government can show that the defendant carries a serious risk of flight.

　　　　1.　　The defendant is a risk of flight because he cannot comply with court supervision.

The defendant is a flight risk based on his pattern of refusing to comply with court supervision. For the past 15 years, he has been under a restraining order prohibiting him from making contact with his ex-girlfriend and mother of his child. A New Jersey court imposed the restraining order after the ex-girlfriend reported that the defendant endangered her life by attempting to strangle her. He violated the order four times, once sustaining a conviction. In one reported violation echoing the conduct underlying his current charge, he called his ex-girlfriend from out of state and threatened to travel to her home and kill her. If courts cannot keep the defendant from continuing to make terroristic threats, they cannot keep him from fleeing.

　　　　2.　　The defendant's dangerousness shows he is a risk of flight.

The defendant's dangerousness directly informs the determination on his risk of flight because someone who commits a violent crime on pretrial release is not going to stick around for the police to show up or for the court to punish him.

The conduct related to this indictment shows that the defendant is dangerous. In a series of voicemails made on January 31, he threatened to punch Senator Warner at a town hall event and to shoot Senator Warner while lying in wait outside the Senator's home. He also talked about how Lee Boyd Malvo would help him: "Only thing I can say is that like Malvo is back my friend and we have a bullet for inside your ear from the state of people in Virginia."

As the defendant stated in those voicemails, he made the threats based on his disagreement with Senator Warner's policies, including on funding for the military, U.S. involvement in overseas conflicts, the southern border, and abortion. The defendant wanted to interfere with Senator Warner's effort to carry out his official duties and to retaliate against the Senator for past policies. After hearing the voice messages, Senator's Warner's staff feared for their safety and the Senator's safety and contacted the U.S. Capitol Police to report the defendant.

On February 13, the defendant again contacted Senator Warner's Richmond office, this time demanding to meet with the Senator. The staff, again concerned for their safety, reported the call to the U.S. Capitol Police.

On February 21, agents with the FBI and Capitol Police arrested the defendant on a federal warrant at his hotel room in Virginia Beach. Agents advised him of his *Miranda* rights, and he waived them and agreed to speak to the agents. He admitted that he had marijuana in his hotel room that he explained was his "personal stash."

Agents then transported the defendant to the Norfolk FBI office, where Capitol Police interviewed him. The interview was video and audio recorded. While being interviewed, the defendant confessed to making all of the threatening messages. He further admitted that he made a third set of calls to Senator Warner's office *that same morning*, again demanding to meet with the Senator. The defendant added that he had used an electronic tablet to research information on Members of Congress to include finding phone numbers to call them.

Also during the interview, the defendant confessed to having enough cocaine in his hotel room to "destroy my life, this is going to ruin my life, I'm going to be charged with all kinds of stuff now."

And he told the agents that he would continue to try to make contact with Senator Warner at a future town hall event so that he could at least punch Senator Warner in the jaw. That he intends to continue attempting to commit violence against a Member of Congress is evidence alone that he is a danger to the community. That his own arrest did not deter him from continuing to engage in criminal conduct is even more evidence he is a danger to the community.

Later that day, agents secured a search warrant to recover any drugs, drug paraphernalia, and electronic devices from the defendant's hotel room, based in large part on the defendant's own statements. The agents recovered from the hotel room three baggies of suspected cocaine packaged for distribution and weighing a total of roughly 8 grams next to a digital scale. They also recovered 18 grams of suspected marijuana. The substances field-tested positive for cocaine and marijuana, respectively.

Because the defendant was caught with distribution amounts of cocaine in his hotel room, he is a flight risk. As then-Justice Breyer observed when reviewing the legislative history of the Bail Reform Act, "Congress concluded that 'flight to avoid prosecution is particularly high among persons charged with major drug offenses.'" *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 19 (1983)), *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990).

Turning back to the defendant's refusal to comply with his restraining order, courts in this Circuit have held that, where a defendant has a "blatant disregard for … the terms of" court supervision, he "is a danger to the community." *United States v. Chaldin Point Du Jour*, No. 3:11-CR-15, 2013 WL 5505314, at *2 (N.D.W. Va. Oct. 2, 2013); *see also United States v. Mandal*, No. 5:09CR39, 2010 WL 2472251, at *2 (N.D.W. Va. June 16, 2010) (finding that defendant violated the conditions of his release and the Court was unpersuaded that if defendant continued

on bond that he would not pose a risk to the community). The defendant's frequent refusal to comply with a restraining order shows that he is such a danger.

3.     The defendant's transient status shows he is a risk of flight.

Although the defendant may not "flee the district," as one district court concluded when affirming a magistrate judge's pretrial detention order based on "risk of flight," "due to the defendant's apparent transient lifestyle coupled with his lack of steady, legal employment, it would prove difficult to locate the defendant if released on bond." *United States v. Keel*, No. 1:16-CR-187-CAP-JKL, 2017 WL 1371870, at *2 (N.D. Ga. Apr. 17, 2017).

The facts bear out the defendant's "transient lifestyle." He is unemployed. He was staying at a hotel until last week, when his payment ran out. He now has no place to live. Notably, when the defendant lost his job, family members in the area did not open their doors to him; he still lived on his own. He may not have "financial resources that he could use to flee," Objections at 10, but he has a car that he can drive.

4.     The defendant's other arguments are unavailing.

The Defendant further argues that the sentencing guidelines range is very low, so the defendant has little incentive to flee. That is not correct. The defendant faces a guidelines range of 51–63 months, years longer than he's ever served before. His base offense level is 12. U.S.S.G. § 2A6.1(a). He made clear to agents his intent to carry out the threat, so he receives a six-point enhancement under § 2A6.1(b)(1).The offense involved more than two threats, so he gets an additional two-point enhancement under § 2A6.1(b)(2). And he put Senator Warner's office in a panic at least twice, causing substantial disruption of public, governmental, or business functions or services, for another four-point enhancement under § 2A6. That is a Total Offense Level of 24;

together with a Criminal History Category I, the guidelines show that the defendant faces significant prison time.

The defendant's final contention that the timing in charging him suggests that "the government apparently did not believe that [he] presented a particularly high risk of flight," Objections at 11, is not an informed one. The facts will show that the defendant made at least two additional calls to Senator Warner's office. The week of February 13, the defendant contacted the office to demand an appointment with the Senator, again disrupting the office. And when the defendant was arrested last week, he admitted that he had called the office that same morning, again demanding to see the Senator.

The government has met the defendant's burden. By satisfying the preponderance standard at this initial stage, the government automatically satisfies the same standard for the detention hearing. The Court should thus detain the defendant pretrial.

## CONCLUSION

For all these reasons, the Court should hold a detention hearing. And the proffered facts will show that no condition or combination of conditions will reasonably assure the defendant's appearance at future proceedings or the community's safety. So the Court should detain the defendant pending trial.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:  /s/_____
     William B. Jackson
     Assistant United States Attorney
     Virginia State Bar No. 84012
     United States Attorney's Office

101 West Main Street, Suite 8000
Norfolk, VA 23510
Telephone: 757-441-6331
Facsimile: 757-441-6689
E-Mail: William.Jackson3@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on this 26th day of February, 2019, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF)

to:

Andrew W. Grindrod
Wilfredo Bonilla, Jr.
Office of the Federal Public Defender – Norfolk
150 Boush St., Suite 403
Norfolk, VA 23510
(757) 222-7062
Fax: (757) 457-0880
Email: andrew_grindrod@fd.org
       wilfredo_bonilla@fd.org


      /s/_____
      William B. Jackson
      Assistant United States Attorney